373 So.2d 956 (1979)
FORD MOTOR CREDIT COMPANY, Appellant,
v.
Frances C. SHEEHAN, Appellee.
No. LL-217.
District Court of Appeal of Florida, First District.
August 9, 1979.
*957 Haywood M. Ball and Edward L. Kelly of Ulmer, Murchison, Ashby & Ball, William G. Cooper of Kent, Sears, Durden & Kent, Jacksonville, for appellant.
Hal Castillo of Lewis, Paul, Isaac & Castillo, Jacksonville, for appellee.
ERVIN, Judge.
Ford Motor Credit Company appeals jury verdicts awarding Sheehan compensatory and punitive damages on one count of a complaint charging intentional infliction of mental distress and a second count alleging *958 a violation of Section 559.72(7), Florida Statutes (1975).[1]
On October 28, 1974, Sheehan purchased a Ford automobile which was financed by Ford Credit pursuant to the terms of a retail installment contract. Later, Sheehan moved to various locations and became delinquent on his account. Ford Credit was unable to locate Sheehan and assigned the account to a central recovery office maintained by it in Michigan. On May 1, 1975, Sheehan's mother, who lived in Coventry, Rhode Island, received a telephone call from a woman who identified herself as being employed by Mercy Hospital in San Francisco, California. She was advised that one or both of Sheehan's children had been involved in a serious automobile accident and that the caller was attempting to locate Sheehan. The mother supplied information to the caller concerning his home and business addresses and phone numbers located in Jacksonville, Florida.
Sheehan testified that on May 1, 1975, he returned a call to his mother's home in Rhode Island, spoke to his sister, and as a result of information received in that telephone conversation, placed calls during a seven-hour period to hospitals and police departments in San Francisco, California until he finally discovered the information was false. The following day, Sheehan's automobile was repossessed by Search International, an independent contractor with Ford Credit.
The jury awarded Sheehan $4,000 compensatory damages and $11,000 punitive damages. As to that count charging a violation of Section 559.72(7), we conclude the statute has no application since it cannot regulate actions of individuals in Michigan or Rhode Island.[2] See Equitable Life Assur. Soc. of U.S.A. v. McRee, 75 Fla. 257, 78 So. 22 (1918); Burns v. Rozen, 201 So.2d 629 (Fla. 1st DCA 1967).
We affirm the verdict assessing damages as to that count alleging intentional infliction of mental distress. The majority rule recognizes the tort of severe emotional distress intentionally caused by a defendant. See Annot., 87 ALR3d 201 (1978) and Restatement (Second) of Torts, § 46 (1965). See also Magruder, Mental and Emotional Disturbance in the Law of Torts, 47 Harv.L. Rev. 1033, 1059 (1936); Prosser, Law of Torts, Ch. 12 (4th ed. 1971). Section 46(1) of the Restatement states the rule in the following manner:
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
There is hardly any question that under the majority rule Ford Motor Credit would be liable to Sheehan for the distress it caused him. The facts here are quite similar to those in the classic case of Wilkerson v. Downton, 2 Q.B.D. 57 (1897), which in turn are set forth in illustration 1 of the Restatement. Thus a cause of action is stated when one person falsely tells another, as a practical joke, that her husband has been seriously injured and is in the hospital with both legs broken. As a result of this communication the wife suffers severe emotional distress and/or physical illness. The person responsible may be subject to liability for either the emotional distress, the physical illness or both. While Ford Motor Credit did not directly communicate the false information to Sheehan, it was the causative force which set into motion the communication resulting in Sheehan's severe emotional distress. Whether or not Ford Motor Credit intended to inflict severe emotional distress is immaterial. Where the actor knows that such distress is certain, or substantially certain to result from his conduct, the rule applies. See comment *959 to section 46. It also applies where he acts recklessly "in deliberate disregard of a high degree of probability that the emotional distress will follow." Id.
We disagree with Ford Motor Credit's argument that Sheehan failed to prove the existence of severe emotional injury. As section 46 makes clear, it is not necessary that bodily harm occur. If the conduct is sufficiently extreme and outrageous, there may be recovery for emotional distress alone, without such harm. See comment i. Moreover, while severe emotional distress must be proved, often the "character of the defendant's conduct is in itself important evidence that the distress has existed." See comment j. Finally the comment continues: "[T]he mere recital of the facts in Illustration 1 ... goes far to prove that the claim is not fictitious." The inquiry then, in cases of this sort, focuses primarily upon the conduct of the defendant. If that conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community . .", comment d, it clearly falls within the category of extreme and outrageous conduct.
Sheehan testified that following a conversation with his sister, who relayed the false information to him concerning his children, he was extremely worried, upset, and nearly out of his mind for a continuous period of seven hours while he attempted to discover the condition of his children. This testimony is sufficient proof of emotional distress which "includes all highly unpleasant mental reactions, such as fright, horror, grief, ... worry, ... ." Comment j. While Sheehan's testimony, considered alone, is not proof of severe emotional distress, when combined with the conduct of Ford Motor Credit, its submission to the jury was entirely appropriate.
Ford Motor Credit's conduct clearly falls within that proscribed by the Restatement and, if Florida has adopted the majority rule, Ford Motor Credit may be answerable in damages as to the first count of Sheehan's complaint. The minority rule precludes an independent cause of action for severe emotional distress unconnected with another tort. See Annot., 87 ALR3d at 211. The author of the annotation places Florida with the minority, as do two cases from the Third District: Sacco v. Eagle Finance Corp. of Miami Beach, 234 So.2d 406 (Fla. 3d DCA 1970) and Gellert v. Eastern Air Lines, Inc., 370 So.2d 802 (Fla. 3d DCA 1979). However, another Third District case, Korbin v. Berlin, 177 So.2d 551 (Fla. 3d DCA 1965), allowed an action to proceed on behalf of a six-year-old child for severe emotional distress against a defendant who allegedly accused the child's mother of adultery.[3] Additionally, two federal cases, Singleton v. Foreman, 435 F.2d 962, 971 (5th Cir.1970) and Gibson v. Greyhound Bus Lines, Incorporated, 409 F. Supp. 321, 325 (D.C.M.D.Fla. 1976), place Florida with the majority.
Our Florida Supreme Court has furnished as yet no definitive answer. It is our view, after examining four opinions on the subject, Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950); Slocum v. Food Fair Stores of Florida, 100 So.2d 396 (Fla. 1958); LaPorte v. Associated Independents, Inc., 163 So.2d 267 (Fla. 1964); Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974), that an independent action for intentional infliction of severe emotional distress will be permitted if facts are properly alleged and proved. For example, Kirksey v. Jernigan, supra, while disallowing actions in simple negligence for mental pain unconnected with physical injury, stated that where the wrongful act reasonably implied such malice as would justify the assessment of punitive damages, an action might be appropriate. Id. at 189. *960 Perhaps the strongest statement by the court was in Slocum v. Food Fair Stores of Florida, supra, in which it distinguished between actions alleging mere emotional distress and actions involving severe emotional distress by quoting the following from Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich.L.Rev. 874, 889 (1939):
So far as it is possible to generalize from the cases, the rule which seems to be emerging is that there is liability only for conduct exceeding all bounds which could be tolerated by society, of a nature especially calculated to cause mental damage of a very serious kind. 100 So.2d at 397.
The last expression by the court on the subject was in Gilliam v. Stewart, supra, which recognized that there may be circumstances allowing one to recover for emotional damages "when... produced as a result of a deliberate and calculated act performed with the intention of producing such an injury... ." 291 So.2d at 595.
We conclude that there is in Florida no bar to an independent action for intentional infliction of severe mental distress when the conduct alleged is "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, ..." As stated, Ford Motor Credit's conduct falls within that description. Because of the uncertainty of what rule applies in Florida and because of the obvious conflict in cases, we certify the following question to the Florida Supreme Court as one of great public interest:
MAY ONE RECOVER DAMAGES FOR INTENTIONAL INFLICTION OF SEVERE MENTAL DISTRESS WHICH IS NOT INCIDENTAL TO OR CONSEQUENT UPON ANY SEPARATE TORT OR OTHER ACTIONABLE WRONG?
The verdict entered on the count finding a violation of Section 559.72(7) is reversed, and the judgment entered upon the common law count is affirmed. The case need not be remanded for new trial. While we reverse the verdict entered on one of the two counts, we consider the verdicts sufficiently severable to sustain the total damages awarded.
MILLS, C.J., and LARRY G. SMITH, J., concur.
NOTES
[1] Which prohibits anyone, while collecting consumer claims, to engage willfully in conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.
[2] The parties agree that the call from the unidentified person representing she was employed by a hospital in San Francisco in fact emanated from Ford Credit's office in Dearborn, Michigan.
[3] Gellert suggests that Korbin did not permit an independent action for severe emotional distress since the action for emotional damages was connected with the slander of the child's mother. We find this analysis unpersuasive for two reasons: First, no cause of action was brought for slander, and second, the slander, if proved, would have resulted in a tortious act against the mother, not the child. The two causes of action must be considered separate and personal to two different people.