BRADLEY, Judge.
This is a case which involves 42 U.S.C. § 1983.
Luther Joe Pritchett, who is employed as a trooper in the Highway Patrol Division of the Alabama Department of Public Safety (hereinafter Department), filed a complaint against Byron Prescott, Director of the Department, and James L. Fuqua, Chief of the Department’s Highway Patrol Division. Pritchett alleged that there, was unequal application of a residence policy for arresting officers and employees who were employed by the Department and assigned state vehicles. He contends that such unequal application of the Department’s residence policy violated his right to equal protection of the laws guaranteed by the Alabama and Federal Constitutions and thus gave rise to an action pursuant to 42 U.S.C. § 1983.
This case was tried before a jury in August 1984, and the jury returned a verdict for Pritchett and assessed damages at $10,-000. The trial court ordered the parties to submit briefs on the issues of damages and immunity. In January 1985, after considering the arguments of both parties, the court entered a judgment for Pritchett in the amount of $10,000. Prescott and Fu-qua appeal.
In April 1979 Pritchett was transferred from the Driver License Division to the Highway Patrol Division of the Public Safety Department. At the time of his transfer, Pritchett and his family lived in Woodville, located in Jackson County, approximately six miles fromthe police jurisdiction of Scottsboro. Pritchett was informed that Department policy required those who worked in the Highway Patrol Division and were assigned state vehicles to reside in the police jurisdiction of the city in which they were assigned. Pritchett vyas assigned to work in Jackson County and thus was required to live in Scottsboro. Pritchett was unable to locate a home for his family in Scottsboro, so they continued to reside in Woodville. He rented a room in Scottsboro, and lived there during the days he was on duty.
In September 1979 Pritchett filed a grievance with the Department claiming discrimination with regard to the requirement that he live in Scottsboro. The matter was investigated and Pritchett received a letter stating that he was expected to abide by the residency requirement. The evidence shows that Pritchett continued to live in Scottsboro except for days off and leave time until April 1980. At that time he informed his immediate supervisor, Corporal Overtree, that, based upon a written memorandum received from the Department, he was returning to his family’s residence in Woodville.
This memorandum was a written residence policy issued by the Director of the Department on April 22, 1980, and it became effective May 1, 1980. It provides:
“Effective May 1, 1980, all arresting officers and other department personnel utilizing state vehicles must reside within the police jurisdiction of the city in which they are assigned unless written permission is approved through the chain of command by the Director of Public Safety.
*224 “Request for permission to live outside the police jurisdiction may be approved if it is for the convenience of the department or is not detrimental to the operation of the department.
“All personnel who remain in their present residence are exempt from this order until they change residences, are reassigned or transferred. However, due to economic conditions, it may soon be necessary for those employees not living within the police jurisdiction of the city of their assignment to provide their own transportation to and from work.”
Pritchett lived in Woodville from April 1980 until February 1983. On February 8, 1983 Pritchett received a letter from Fuqua and Prescott which stated that he was to immediately return to residing in Scotts-boro. Pritchett again took up residence in Scottsboro, while his family remained in Woodville. Pritchett filed the present action in December 1983.
On appeal Fuqua and Prescott contend that Pritchett’s action is barred by the one year statute of limitations. “[T]he cause of action accrues 'when “facts supportive of a ... civil rights action are or should be apparent to a reasonably prudent person similarly situated.” ’ ” Smith v. McClammy, 740 F.2d 925 (11th Cir.1984) (omission theirs).
It is their contention that because Pritch-ett discovered the unequal enforcement of the residency requirement in 1979 and, as a reasonably prudent person, he should have brought the action at that time. Because more than one year has passed, it is their contention that his claim is barred.
Pritchett, acting as a reasonably prudent person, thought that his 1979 problem had been solved by the memorandum dated April 22,1980. He advised his immediate supervisor of his intended move and was not told that he could not do so. Pritchett remained in Woodville from April 1980 until February 1983. It was not until he received the letter in February 1983 that he realized that he and the Department were giving the memorandum different interpretations. He filed the present action within one year of learning that his civil rights were being violated. Therefore, his claim is not barred by the statute of limitations.
Fuqua and Prescott also argue that Pritchett’s cause of action was barred by the maxim “volenti non fit injuria.” We note that the requirements for the defense of volenti non injuria are: “(1) the plaintiff has knowledge of facts constituting a dangerous condition, (2) he knows the condition is dangerous, (3) he appreciates the nature or extent of the danger, and (4) he voluntarily exposes himself to the danger.” Black’s Law Dictionary 113 (rev. 5th ed. 1979).
Defendants attempt to apply this maxim to the case at bar by saying that Pritchett was told at the time he applied for transfer from the Driver License Division to the Highway Patrol Division that Department policy required that he live within the police jurisdiction of Scottsboro, Alabama, which was the city within Jackson County to which he had been assigned. They say that Pritchett agreed to move his residence to Scottsboro.
Pritchett replies that he did not have all the facts when he agreed to abide by the stated policy. He says that he did not know that such policy was not equally and consistently enforced.
In deciding whether such maxim applied in this case, the trial court could have concluded that Pritchett did not have all of the pertinent facts before him when he made his decision to move to Scottsboro; hence, the maxim in question could not bar the action against the defendants.
Fuqua and Prescott also contend that the trial court erred in denying their motion for directed verdict and their motion for judgment notwithstanding the verdict, and they say that the trial court erred in overruling their motion for new trial because the verdict is contrary to the weight of the evidence. It is well settled that if there exists a “gleam, glimmer, or spark” of conflict in the evidence then the motion for directed verdict and the motion for judgment notwithstanding the verdict are due to be denied. Walker v. Humana Medical Corp., *225 415 So.2d 1107 (Ala.Civ.App.1982). Moreover, a reviewing court will allow all reasonable presumptions of correctness for a verdict and will not set it aside unless the preponderance of the evidence is such as to clearly convince the court that the verdict is palpably wrong and manifestly unjust. Frederick v. Reed, 410 So.2d 95 (Ala.Civ.App.1982).
The evidence shows that subsequent to the written residence policy of May 1,1980, which required arresting officers and other employees who were assigned motor vehicles to reside within the police jurisdiction of the city to which they had been assigned, several officers and employees were found to be living in areas other than the city to which they had been assigned. For example, a trooper had been transferred to Montgomery but was permitted to live in Elmore County. Another officer was transferred to Montgomery and was permitted to live in Autauga County, and another officer was assigned to Huntsville and allowed to live in Madison, Alabama.
Based on the facts set out above, we find that there was a conflict in the evidence sufficient to warrant a denial of the motion for directed verdict and the j. n. o. v. Also, after allowing all reasonable presumptions in favor of the correctness of the verdict, we conclude that the weight of the evidence supports the verdict. Consequently, we find no error in the rulings of the court in this aspect of the case.
The final issue raised by Fuqua and Prescott dealt with whether they should be liable for damages in this case. It is their contention that they are entitled to the defense of qualified immunity. They state that there was absolutely no evidence of bad faith on their part to justify a damages verdict.
In Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the United States Supreme Court stated:
“[A] school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury....”
In Wood, supra, the holding was limited to a situation involving school discipline. In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and cases cited therein, the Supreme Court extended its holding to encompass all cases where the official was claiming qualified immunity.
Qualified immunity is an affirmative defense which must be specifically asserted by the defendants in a section 1983 action. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In the present case the defendants failed to plead immunity as an affirmative defense. In fact, the defendants did not raise what appears to be a good faith defense until their motion for new trial, filed approximately two months after the trial. The defense thus came too late. See Robinson v. Morse, 352 So.2d 1355 (Ala.1977); Rule 8(c), A.R.Civ.P.
Money damages may be awarded in actions brought under 42 U.S.C. § 1983 if it is found constitutional rights have been violated and such violations have thereby caused compensable injury. Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). If liability is found under section 1983, then compensatory damages may be recovered for emotional harm suffered and for the violation of substantive rights, even if no actual damages are proven. Bauer v. Norris, 713 F.2d 408 (8th Cir.1983).
In this case, Pritchett suffered actual damages—he was required to rent a room in Scottsboro, and to incur transportation costs in visiting his family in Wood-ville. There was also testimony relating to his emotional and mental anguish due to being separated from his family. In view of the evidence, the award of damages was authorized.
The judgment of the trial court is affirmed.
AFFIRMED.
*226 HOLMES, J., concurs specially.
WRIGHT, P.J., dissents.